IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

MARY J. THURMAN, )
)
        Plaintiff, )
)
v. ) No. 22-CV-04007-WJE
)
)
AMERICAN HONDA MOTOR CO., INC., )
et al., )
)
        Defendants. )

## ORDER

Pending before the Court are Motions to Dismiss (Docs. 48, 56, 72) and suggestions in support thereof (Docs. 49, 57, 73) filed by Defendants Honda Motor Co., Ltd., Honda R&D Co., Ltd., Honda of Canada Manufacturing, Inc., Honda Development & Manufacturing of America, LLC ("Honda Defendants"), and TS Tech Americas, Inc. ("TS Tech"). Plaintiff Mary J. Thurman has filed suggestions in opposition (Docs. 54, 67, 78), to which the Honda Defendants and TS Tech have timely replied (Docs. 66, 68, 81). The issues are now ripe for consideration.[1] For the reasons that follow, the Motions to Dismiss are denied.

### I. Background

Ms. Thurman's suit arises from a car accident in Missouri on June 26, 2019, where Ms. Thurman was rear-ended in her 2008 Honda Civic. (Doc. 44, ¶¶ 31-33). After the driver's seat allegedly malfunctioned during the crash, Ms. Thurman sustained spinal cord damage, and is now paraplegic. (*Id.*, ¶¶ 34-37). In her Amended Complaint, she alleges strict liability for design defect and negligence. (*Id.*, ¶¶ 48-90).

---

[1] Local Rule 7.0(b) states "[t]he Court may, but need not, order and consider oral argument." The Court does not believe a hearing on these matters is necessary.

Honda Motor Co., Ltd. ("HMC") is a Japanese corporation that designs, manufactures, markets, and distributes Honda vehicles, including in Missouri, through its wholly owned divisions and subsidiaries. (*Id.*, ¶¶ 3, 13; Doc. 54, p. 8). Honda R&D Co., Ltd. ("Honda R&D") is also a Japanese corporation that designed and developed the 2008 Honda Civic for distribution and sale in the U.S., including in Missouri. (Doc. 44, ¶¶ 4, 23). Honda of Canada Manufacturing, Inc. ("Honda Canada") is based in Canada and manufactured Ms. Thurman's 2008 Honda Civic. (Doc. 72, ¶¶ 3, 5; Doc. 72-1, ¶ 21). Honda Development & Manufacturing of America, LLC ("Honda D&M") is an Ohio company that designed or developed the 2008 Honda Civic for distribution, sale, and use in the United States, including the State of Missouri. (Doc. 72, ¶¶ 4, 6). TS Tech is an Ohio corporation that designed, developed, manufactured, and/or sold the driver's seat for the 2008 Honda Civic. (Doc. 44, ¶¶ 7, 26).

## II.  Standard of Review: Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss claims for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "The plaintiff[] bear[s] the burden of establishing a prima facie showing of jurisdiction, and [the Court] view[s] the evidence in the light most favorable to the plaintiff[]." *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020) (citing *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011)). "A prima facie showing 'is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state.'" *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022) (quoting *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011)). First, "[f]ederal courts apply the long-arm statute of the forum state to determine the existence of personal jurisdiction over the parties." *Whaley*, 946 F.3d at 451 (citing Fed. R. Civ. P. 4(k)(1)(A); *Daimler AG v. Bauman*, 571 U.S. 117,

125 (2014)). Then the Court must determine whether exercising personal jurisdiction over the defendant comports with the Due Process Clause. *Bros. & Sisters in Christ*, 42 F.4th at 951.

### III. Analysis

**A. Missouri's long-arm statute provides jurisdiction over the Honda Defendants and TS Tech.**

The Honda Defendants and TS Tech argue that they have not done anything to trigger the Missouri long-arm statute and that exercising jurisdiction in this case would violate due process. (Doc. 49, pp. 6-7; Doc. 57, pp. 6-7; Doc. 73, pp. 6-7). Ms. Thurman argues that Missouri's long-arm statute applies because the Honda Defendants and TS Tech knew their products were going to be used in Missouri and, if defectively designed, could cause injury or death to a Missouri resident. (Doc. 54, pp. 8-10; Doc. 67, pp. 9-10; Doc. 78, p. 8-).

Missouri's long arm-statute provides personal jurisdiction over non-resident defendants based on "[t]he commission of a tortious act within [the] state." Mo. Rev. Stat. § 506.500.1. "With regard to the tortious act prong of the Missouri long-arm statute, it is clear that 'extraterritorial acts which produce actionable consequences in Missouri' may satisfy the requirements of the statute." *N.C.C. Motorsports, Inc. v. K-VA-T Food Stores, Inc.*, 975 F. Supp. 2d 993, 1001 (E.D. Mo. 2013) (quoting *Insituform Tech., Inc. v. Reynolds, Inc.*, 398 F. Supp. 2d 1058, 1063 (E.D. Mo. 2005)). "If a defendant can reasonably foresee [its] negligent actions having consequences felt in Missouri, jurisdiction is authorized." *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 911 (8th Cir. 2012). The long-arm statute is "construed broadly, such that if a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted 'to provide for jurisdiction . . . to the full extent permitted by the [D]ue [P]rocess [C]lause.'" *Hand v. Beach Ent. KC, LCC*, 425 F. Supp. 3d 1096, 1106 (W.D. Mo. 2019) (quoting *Viasystems*, 646 F.3d at 593). Missouri's long-arm statute provided jurisdiction over Suzuki Motor Corporation, a Japanese company, and Suzuki

Manufacturing of America Corporation, a company based in Georgia, after the plaintiff suffered injuries in Missouri from an alleged product defect. *C.C. v. Suzuki Mfg. of Am. Corp.*, No. 4:16-CV-01271-ERW, 2017 WL 4617073, at *1-2 (E.D. Mo. Oct. 16, 2017). Missouri's long-arm statute also applied to a North Carolina tire valve manufacturer when it marketed, sold, and delivered defective tire valves to consumers in Missouri via distributors, dealers, wholesalers, and brokers, resulting in the plaintiff's injuries in Missouri. *Hartley v. Kawasaki Motors Corp.*, No. 20-06098-CV-SJ-GAF, 2020 WL 9218534, at *3 (W.D. Mo. Dec. 4, 2020).

Here, Ms. Thurman adequately alleges that the Honda Defendants and TS Tech negligently designed, developed, and manufactured the driver's seat outside of Missouri, which resulted in the driver's seat malfunctioning and injuring her in Missouri. (Doc. 44, ¶¶ 10-11, 23-26; Doc. 54, p. 9; Doc. 67, p. 10; Doc. 78, p. 8). It is reasonably foreseeable that HMC's alleged negligence designing, marketing, and distributing Honda vehicles would cause Ms. Thurman's injuries because it advertised and sold Honda Civics in Missouri, albeit through its divisions and subsidiaries. (Doc. 54, p. 9); *See Suzuki Mfg. of Am. Corp.*, 2017 WL 4617073, at *1-2. Likewise, it is reasonably foreseeable that Honda R&D's, Honda Canada's, and Honda D&M's alleged negligence designing, developing, and manufacturing the 2008 Honda Civic would cause Ms. Thurman's injuries because Honda vehicles were sold and advertised in Missouri through HMC. (Doc. 54, p. 9; Doc. 78, p. 8); *See Suzuki Mfg. of Am. Corp.*, 2017 WL 4617073, at *1-2. It is also reasonably foreseeable that TS Tech's alleged negligence would have consequences in Missouri because it designed, developed, manufactured, and/or sold a component part through distributors, dealers, wholesalers, and brokers to Missourians. (Doc. 67, pp. 5, 9); *See Hartley*, 2020 WL 9218534, at *3. TS Tech lists Honda as one of its main customers and developed the driver's seat for the 2008 Honda Civic, recognizing the model would be sold globally. (Doc. 67-2, p. 4; Doc.

67-3, p. 2). Missouri's long-arm statute therefore provides jurisdiction over the Honda Defendants and TS Tech.

### B. Jurisdiction over Honda Defendants and TS Tech is consistent with the Due Process Clause.

The Honda Defendants and TS Tech argue that exercising personal jurisdiction over them would violate the Due Process Clause because they do not have a substantial connection with Missouri. (Doc. 49, pp. 9-16; Doc. 57, pp. 7-10; Doc. 73, pp. 9-17). Ms. Thurman argues that the Court can exercise specific jurisdiction over the Honda Defendants and TS Tech because they have a substantial connection with Missouri through commerce. (Doc. 54, pp. 10-19; Doc. 67, pp. 10-19; Doc. 78, pp. 9-18). All parties agree that the Court cannot exercise general jurisdiction over the Honda Defendants and TS Tech. (Doc. 49, pp. 7-9; Doc. 54, p. 10 n. 3; Doc. 57, pp. 5-6; Doc. 67, p. 10 n. 3; Doc. 73, pp. 7-9; Doc. 78, p. 9 n. 2).

"Even if personal jurisdiction over a defendant is authorized by the forum state's long-arm statute, jurisdiction can be asserted only if it comports with the strictures of the Due Process Clause." *Viasystems*, 646 F.3d at 594 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). "The touchstone of the due-process analysis remains whether the defendant has sufficient 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "This connection must be based on 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 980 (8th Cir. 2015) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)). "The defendant's contacts with the forum must thus be more than 'random, fortuitous, or attenuated,' and must permit the defendant to 'reasonably anticipate being haled into

court there.'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 474-75). "In other words, '[t]o establish specific jurisdiction the suit must arise out of or relate to the defendant's contacts with the forum.'" *Alexander v. Suzuki Motor of Am., Inc.*, No. 4:17-CV-1942-JCH, 2018 WL 3819037, at *3 (E.D. Mo. Aug. 10, 2018) (quoting *Suzuki Mfg. of Am. Corp.*, 2017 WL 4617073, at *2).

> In this circuit, the due process standard has been expressed as a consideration of five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) Missouri's interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties.

*Id.* (quotation omitted). "Although [e]ach defendant's contacts with the forum State must be assessed individually, [n]aturally, the parties' relationships with each other may be significant in evaluating their ties to the forum." *Hand v. Beach Ent. KC, LCC*, 425 F. Supp. 3d 1096, 1107 (W.D. Mo. 2019) (quotations and citations omitted).

The Supreme Court recently reasoned that when "a resident-plaintiff sues a global car company, extensively serving the state market in a vehicle, for an in-state accident . . . [it is] an illustration—even a paradigm example—of how specific jurisdiction works." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1028 (2021) (citing *Daimler*, 571 U.S. at 127, n. 5). In *Ford*, the defendants attempted to rely on *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017), where the Court declined to exercise personal jurisdiction over a national pharmaceutical company in California when nonresidents were injured out-of-state by its prescription drug. 141 S. Ct. at 1030-31. The Court distinguished *Bristol-Myers* because the "plaintiffs [in *Ford* were] residents of the forum States[; t]hey used the allegedly defective products in the forum States[; a]nd they suffered injuries when those products malfunctioned in the forum States." *Id.* at 1031. There was a connection between the plaintiffs' claims and Ford's activities in the forum state. *Id.*

Specific jurisdiction exists over the HMC because they have sufficient minimum contacts with Missouri. HMC actively seeks to serve a market in Missouri and its product, the 2008 Honda Civic, allegedly malfunctioned in Missouri. (Doc. 54, pp. 14-16); *see Ford Motor Co.*, 141 S. Ct. at 1027. HMC purposefully avails itself of the privilege of conducting business in Missouri by advertising and selling cars in Missouri through their various divisions and subsidiaries.[2] (Doc. 54, pp. 14-16; Doc. 44, ¶ 14). HMC "systematically served a market in [Missouri] for the very vehicle[] that the plaintiff[] allege[s] malfunctioned and injured [her]," illustrating a "strong relationship between the defendant, forum, and the litigation." *Ford Motor Co.*, 141 S. Ct. at 1028 (quotation omitted). Without HMC's contact with Missouri, Ms. Thurman might never have bought a Honda Civic, and not brought these claims. *See id.* at 1029. Ms. Thurman is a resident of Missouri, drove in Missouri, and was injured in Missouri. (Doc. 44, ¶¶ 1, 31-39). Missouri has a strong interest in providing a forum for its residents when they are injured in their home state. *See Myers*, 689 F.3d at 913. This is also a convenient forum because the evidence is in Missouri, where the accident occurred. *See N.C.C. Motorsports*, 975 F. Supp. 2d at 1005. "The Eighth Circuit has 'endorsed the idea that when a seller heads a distribution network it realizes the much greater economic benefit of multiple sales in distant forums, which in turn may satisfy the purposeful availment test.'" *Hartley*, 2020 WL 9218534, at *5 (quoting *Clune v. Alimak AB*, 233 F.3d 538, 543 (8th Cir. 2000)). This Court will exercise specific jurisdiction over HMC.

Specific jurisdiction exists over Honda R&D, Honda Canada, and Honda D&M. Honda R&D is a Japanese corporation, Honda Canada a Canadian company, and Honda D&M an Ohio company. (Doc. 44, ¶¶ 4, 23; Doc. 72, ¶¶ 3-6). Yet, Honda R&D and Honda D&M allegedly

---

[2] There are at least 15 Honda dealerships in Missouri, and Missouri is a part of a "Worldwide Sales Network" with six different regions, including North America. (Doc. 54, p. 15; Doc. 54-1, pp. 6, 9). In the past 20 years, Honda has sold more than 28 million vehicles in the U.S. (Doc. 54-1, p. 17).

designed and developed the defective 2008 Honda Civic for sale in the U.S., including in Missouri. (Doc. 44, ¶¶ 4, 23; Doc. 72, ¶¶ 4, 6). Honda Canada allegedly manufactured Ms. Thurman's defective Honda Civic. (Doc. 72, ¶¶ 3, 5; Doc. 72-1, ¶ 21). It is illogical to analyze Honda R&D's, Honda Canada's, and Honda D&M's actions in a vacuum; their ties with HMC are significant when evaluating their contact with Missouri. *See Hand*, 425 F. Supp. 3d at 1107. Honda R&D and Honda D&M specifically designed and developed the Honda Civic for the U.S. market, and through HMC and its divisions and subsidiaries, those vehicles were advertised and sold in Missouri. (Doc. 54, pp. 14-15; Doc. 78, pp. 13-14). Similarly, Honda Canada manufactured Ms. Thurman's 2008 Honda Civic, and through HMC, that vehicle was advertised and sold in Missouri. (Doc. 78, pp. 13-14). Without these entities' coordinated and systematic contact with Missouri, Ms. Thurman may have never bought a Honda Civic, and brought these claims, illustrating a strong relationship between these entities, Missouri, and Ms. Thurman's claims. *See Ford Motor Co.*, 141 S. Ct. at 1028. Missouri also has a strong interest in providing a forum for its residents when they are injured in Missouri. *See Myers*, 689 F.3d at 913. This is a convenient forum because the accident occurred in Missouri. *See N.C.C. Motorsports*, 975 F. Supp. 2d at 1005. This Court will exercise specific jurisdiction over Honda R&D, Honda Canada, and Honda D&M.

Specific jurisdiction similarly exists over TS Tech. A manufacturer's "'strategic choice of distributors that could reach much of the country [is] evidence of [its] efforts to place its products in the stream of commerce,'" and its only reasonable that it should be held accountable in the forum where it reaps the benefits of this choice. *Hartley*, 2020 WL 9218534, at *5 (quoting *Clune*, 233 F.3d at 543). "'Despite [TS Tech's] claim that it had no actual knowledge that one of its distributors sold products in [the forum state], such ignorance defie[s] reason and could aptly be labeled as willful.'" *Id.* (quoting *Clune*, 233 F.3d at 543). TS Tech did more than simply set a

product adrift in the international stream of commerce. *See Alexander*, 2018 WL 3819037, at *5. It manufactured the driver's seat that allegedly injured Ms. Thurman exclusively for a United States market and agreed to distribute it through Honda, knowing Honda vehicles would be sold across the U.S., including in Missouri. (Doc. 67-2, p. 4; Doc. 67-3, p. 2). There is a strong relationship, therefore, between TS Tech, Missouri, and Ms. Thurman's injury. *See Ford Motor Co.*, 141 S. Ct. at 1028. Likewise, Missouri has a significant interest in providing a forum for its residents and this forum is convenient because the evidence is in Missouri. *See Myers*, 689 F.3d at 913; *N.C.C. Motorsports*, 975 F. Supp. 2d at 1005. This Court will exercise specific jurisdiction over TS Tech.

## IV. Conclusion

It is hereby ORDERED that the Motions to Dismiss are DENIED. (Docs. 48, 56, 72).

Dated this 16th day of September, 2022, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge